UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE VANDENBROEK : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:07-cv-869 (JCH) |
| : | |
| PSEG POWER CONNECTICUT L.L.C. : | |
|     Defendant. : | MARCH 9, 2009 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT(DOC. NO. 34)**

**I.    INTRODUCTION**

Bruce Vandenbroek brings this employment discrimination action against his former employer, PSEG Power Connecticut L.L.C. ("PSEG"), alleging violations of the Americans with Disabilities Act ("ADA"), the Connecticut Fair Employment Practices Act ("CFEPA"), and the Family and Medical Leave Act ("FMLA").  PSEG has moved for summary judgment on the ADA and CFEPA claims on the grounds that Vandenbroek cannot establish that he was terminated because of his disability.  PSEG also moves for summary judgment on Vandenbroek's FMLA claim on the grounds that there is no evidence that he was terminated in retaliation for taking medical leave in violation of FMLA.

For the following reasons, the motion is GRANTED.

## II.     FACTS[1]

PSEG operates the Bridgeport Harbor Power Plant in Bridgeport, Connecticut, which provides electricity to southern Connecticut.  Vandenbroek began working for PSEG in January 1990.  At the time his employment was terminated, he was working as a Boiler Utility Operator at the Bridgeport plant.  His direct supervisor was Theodore Heyward, a senior operations supervisor, who reported to Michael Cilinski, the Production Manager and Operations Department Manager.

PSEG required its employees, including Vandenbroek, to adhere to its Employment Policies and Procedures as set forth in the PSEG employee manual. Vandenbroek was given a copy of the manual.  Among the enumerated employment policies are several types of required conduct that are critical to the plant's operation and safety.  Employees are admonished that a violation of these policies could subject them to immediate termination.  One of those policies is the "no call/no show" rule, which requires employees who intend to miss a shift to call their shift supervisor before the start of the shift so that coverage could be arranged.  Vandenbroek was aware of this policy and understood what it required of employees.

On February 3, 2006, Vandenbroek violated the no call/no show policy by failing to appear for his scheduled shift.  When he reported to work the following day, Heyward asked him where he had been.  Vandenbroek said that he had called a co-worker a half

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support his allegations.

2

hour before his shift was scheduled to begin and told him that he wanted to take a "personal day." No one told Heyward about that call. Vandenbroek did not ask for permission to take a personal day in advance of his no show, and he did not contact his shift supervisor as required by the employment policy.

Because a no call/no show violation is a serious violation of PSEG policy, PSEG's office administrator, Kelly Pereira, conducted a fact-finding investigation of this incident. As part of the investigation, Pereira interviewed Vandenbroek in the presence of his union representative. Vandenbroek said that he missed his shift because he was in upstate Connecticut to help a friend and that he had limited cell phone service. He later admitted that this statement was false and that he missed work because he had been drinking heavily and that he lied to Pereira. Vandenbroek did so because he did not think it was appropriate to tell Pereira what had actually happened and that he did not want PSEG to know the real reason for his absence.

Pereira prepared a fact-finding report of her investigation and gave a copy of it to Cilinski. Cilinski discussed the incident with his boss, Robert Parnell, the Director of Generation, and Curtis Bux, an individual relations manager. Both Parnell and Bux believed Vandenbroek should be terminated for this violation of the no call/no show policy, but Cilinski persuaded them to give Vandenbroek a second chance because he was a long-term employee. Vandenbroek was given a disciplinary notice ("Notice") and a two-day suspension for the violation. The Notice was prepared by Pereira and Heyward, and it was signed by Heyward. Cilinski did not prepare, review, or sign it. The Notice stated that Vandenbroek did not obtain approval from the shift supervisor for

a personal day and did not report to work pursuant to Company policy.  Vandenbroek read and signed the disciplinary notice, including the last paragraph which stated:

> It is imperative you understand the seriousness of your misconduct and the need to improve your overall work performance.  Failure to improve your overall work performance will result in disciplinary action up to and including discharge.

At the time of the investigation and Notice, Vandenbroek did not advise anyone at PSEG that he was an alcoholic.

On February 21, 2006, five days after he signed the disciplinary notice for the February 3, 2006 no call/no show violation, Vandenbroek failed to appear for his scheduled 6:00 p.m to 6:00 a.m. shift.  When the shift supervisor learned that Vandenbroek was not at work, he asked a co-worker to call Vandenbroek at home.  He called, but no one answered.  The shift supervisor also called Vandenbroek at home, but got no answer.  The shift supervisor reported to Cilinski that Vandenbroek was a no show.

Ten hours after he was supposed to report to work, at 4:15 a.m., Vandenbroek called the plant and spoke to a co-worker whom he had known for many years, Ronald Sledge, and told him that he had a drinking problem.  Sledge, at Vandenbroek's request, provided Vandenbroek with the contact information for PSEG's Employee Assistance Program.  Cilinski first learned about Vandenbroek's drinking problem when Sledge told him about Vandenbroek's telephone call.

The next day PSEG called Vandenbroek and asked him to come in for an afternoon meeting.  Vandenbroek said he could not come in because he had a doctor's appointment.  Vandenbroek was told that he could not return to work without first

coming in for a meeting and participating in a fact-finding investigation of the no call/no show incident. Vandenbroek told PSEG that he was temporarily unavailable to return to work or participate in the investigation because he was receiving treatment for his alcoholism.

About one week later, on March 2, 2006, Vandenbroek said he was able to participate in the investigation. The investigation was again conducted by Pereira, who interviewed Vandenbroek in the presence of his union's executive vice president and chief steward. Vandenbroek gave a statement to Pereira admitting that he had been lying to PSEG and that both no call/no show incidents were due to his drinking problem. Pereira again prepared a fact-finding report of her investigation.

After the investigation was completed, Cilinski discussed the situation with Parnell and Bux who said Vandenbroek's employment should be terminated for his repeated violation of the no call/no show policy. Cilinski agreed and informed Vandenbroek on March 2, 2006, that he was being terminated. Cilinski believed that, given the repeated violation and the "short reoccurrence," termination was "the only response." Cilinski Dep. at 52.

There is no evidence that Cilinski's decision to terminate Vandenbroek was based on anything other than his two violations of the no call/no show policy or that the decision was based on Vandenbroek's alcoholism or treatment for alcoholism.[2] When

---

[2] PSEG asserts that it is an undisputed fact that the decision to terminate Vandenbroek was based solely on his repeated violations of the no call/no show policy and supports this allegation with evidence that would be admissible at trial. See Def.'s Local Rule 56(a)1 Statement ¶ 23. In response, Vandenbroek's Local Rule 56(a)2 Statement denies that assertion, but does not support the denial with citation to an affidavit or admissible evidence as required by D. Conn. L. Civ. R. 56(a). Vandenbroek only

5

PSEG terminated Vandenbroek, it was aware that he suffered from alcoholism and had entered a rehabilitation program

Vandenbroek filed a union grievance regarding his termination. The grievance was denied, and the union took no further action to challenge the decision to terminate him.

Cilinski had previously terminated other employees for failing to comply with PSEG's attendance policies. PSEG had entered into a rehire agreement with another employee who had been terminated for alcohol-related problems, but it did not consider making such an arrangement with Vandenbroek. Unlike Vandenbroek, that employee was not terminated for violating the no call/no show policy and his rehire was negotiated by the union, which intervened on his behalf.

Vandenbroek had been an untreated alcoholic for more than twenty-seven years, including the sixteen years he was employed by PSEG. He was also addicted to prescription drugs and used cocaine and crack cocaine from April 2005 to February 22, 2006. Despite his alcoholism and drug addiction, he performed his job responsibilities in a good manner.

---

takes issue with PSEG's assertion that the decision to terminate Vandenbroek was based on "repeated" violations of the policy, which he characterizes as a "gross exaggeration" because two instances cannot constitute "repeated" violations. He goes on to say that it is "indisputable that the plaintiff's violation of the no call/no show policy was the direct result of his alcoholism ... which ... is termination by reason of the employee's alcoholism and/or substance abuse for purposes of the American Disability Act [sic]." Nonetheless, even if the court construed Vandenbroek's Rule 56(a)2 Statement as a denial of PSEG's assertion that the decision to terminate Vandenbroek was based solely on his violations of the no call/no show policy and not on Vandenbroek's alcoholism or treatment for alcoholism, Vandenbroek's failure to support his denial with any evidence authorizes the court to deem this fact to be admitted. See D. Conn. L. Civ. R. 56(a). Moreover, in the "Disputed Issues of Material Fact" Section of his Rule 56(a)2 Statement, Vandenbroek does not identify this issue as a disputed material fact to be tried.

On February 23, 2006, Vandenbroek entered a program to treat his alcohol and drug dependency at Silver Hill Hospital in New Canaan, Connecticut. On March 1, 2006, his treating physician certified that he could return to work on March 6. Vandenbroek was discharged from Silver Hill on March 2 and continued treatment on an outpatient basis.

In 2005, Vandenbroek took medical leave under the FMLA on two occasions, to have nasal surgery and to recover from a back injury. PSEG accepted his leave certifications without contesting the appropriateness of the leave, but adversely labeled each leave as an "absence occurrence" and warned Vandenbroek that the absences were unacceptable.

PSEG concedes for the purpose of this Motion that Vandenbroek is a recovering alcoholic and that he may qualify as disabled under the ADA.

### III.   STANDARD OF REVIEW

Summary judgment should be granted if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and all ambiguities and inferences that can reasonably be drawn from the facts must be viewed in the light most favorable to the nonmoving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Only material factual disputes -- those that might affect the outcome of

the suit under the governing law -- will properly preclude the entry of summary judgment. Id. at 247-48. Once the party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party, to defeat summary judgment, must come forward with evidence such showing that there is a genuine factual issue for trial. E.g., Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002). A disputed issue is not created by a mere allegation in the pleadings or by surmise or conjecture. Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, as to issues on which the non-moving party bears the burden of proof, the moving party may simply point to the absence of evidence to support the non-moving party's case. Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Conclusory assertions also do not create a genuine factual issue. Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). Summary judgment is only proper when reasonable minds could not differ as to the import of the evidence. Brown v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

     Summary judgment is appropriate in discrimination cases, even those that involve state of mind or intent. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Trial courts should not treat discrimination different than other questions of fact. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

     In a case under the ADA, the court applies the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973), to determine if summary judgment is warranted. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

First, the plaintiff must establish a prima facie case of discrimination. If he succeeds in doing so, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. If it does so, the presumption of discrimination that arises from the plaintiff's prima facie case drops from the picture, and the plaintiff must then come forward with sufficient evidence to support a rational finding that the defendant's proffered non-discriminatory reason is false and a mere pretext for discrimination and, that more likely than not, discrimination was the real reason for the adverse employment action. E.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996).

## IV.  DISCUSSION

PSEG maintains that Vandenbroek's ADA and CFEPA claims fail as a matter of law because there is no evidence that Vandenbroek's employment was terminated because he was an alcoholic. It also argues that Vandenbroek's FMLA claim fails because there is no evidence that PSEG retaliated against him for taking FMLA leave. In opposition, Vandenbroek asserts that he was impermissibly terminated for conduct that was causally related to his disability which, he argues, is tantamount to termination because of his disability. He also contends that there is a genuine factual dispute as to whether he was terminated in retaliation for taking leave under the FMLA.

### A.  Discrimination Under ADA & CFEPA

PSEG maintains that Vandenbroek's ADA and CFEPA claims fail as a matter of law because the undisputed evidence demonstrates that it terminated Vandenbroek's employment because of his repeated failure within a few weeks to comply with its no

9

call/no show policy -- in other words, because there is no evidence of a causal link between his alleged disability, alcoholism, and his termination.

Vandenbroek argues that summary judgment is not appropriate because there is a material issue of fact as to whether he was terminated for conduct that was causally related to his alcoholism. In support of this argument, Vandenbroek relies on a Second Circuit case, Teahan v. Metro-North Commuter R.R., 951 F.2d 511 (2d Cir. 1991), which held that an employee's disability should not be distinguished from its consequences in determining whether he was terminated because of his disability. Id. at 515. The court agrees with PSEG's contention that Teahan is legally and factually distinguishable and that it does not relieve Vandenbroek of his obligation to present evidence that PSEG's proffered reason for his termination was false and that the real reason was illegal discrimination based on his disability.

Teahan involved claims under the Rehabilitation Act. At the time Teahan was decided, the Rehabilitation Act did not contain a provision analogous to section 11214(c)(4) of the ADA, which explicitly authorizes employers to hold alcoholic employees to the same standards of conduct as non-alcoholic employees, even if their unsatisfactory conduct is related to their alcoholism. In 1992, after Teahan was decided, the Rehabilitation Act was amended, see 29 U.S.C. § 791(g), to incorporated the ADA's standards for discrimination, thereby eliminating the "firm choice" accommodation rule which had required employers to accommodate an alcoholic employee by initially offering him a choice between treatment and discipline. See Mercado v. New York City Hous. Auth., No. 95Civ10018(LAP), 1998 WL 151039, at *12

(S.D.N.Y. Mar. 31, 1998).  Thus, contrary to Vandenbroek's contentions, Teahan is not controlling.  In fact, Teahan is contrary to the express provision of the ADA which allows an employer to discharge an employee for conduct caused by alcoholism.  See 42 U.S.C. § 12114(c)(4); see also Brennan v. New York City Police Dept., No. 93Civ8461(BSJ), 1997 WL 811543, at *5 (S.D.N.Y. May 27, 1997) (noting that the ADA does not require the lowering of performance standards to accommodate an employee's alcoholism and that courts consistently find that termination for misconduct, even if caused by alcoholism, does not violate the ADA), aff'd, 141 F.3d 1151 (2d Cir. 1998).

     Unlike other sections of the ADA, which consider conduct resulting from a disability to be part of the disability rather than a separate basis for termination, section 12114(c)(4) authorizes discharge for misconduct that is caused by a disability in cases involving alcoholism and illegal drug use: "[An employer] may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the alcoholism or drug use of such employee."  42 U.S.C. § 12114(c)(4); accord Altman v. New York City Health & Hosp. Corp., 100 F.3d 1054, 1060 (2d Cir. 1996).  Further, under this section of the ADA, employers are not required to make any reasonable accommodations for employees who are illegal drug users or alcoholics.  Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1086 (10th Cir. 1997).

     Indeed, in ADA cases involving alcoholism and illegal drug use, courts recognize

the distinction between disability-caused conduct and disability itself as a cause for termination.  See Hartog, 129 F.3d at 1085-88 (reviewing cases in all circuits and finding that "the disability vs. disability-caused conduct dichotomy seems to be unique to alcoholism and drugs"); Collings v. Longview Fibre Co., 63 F.3d 828, 832 (9th Cir. 1996) (holding that employees may be discharged for drug-related misconduct at the workplace); Despears v. Milwaukee Co., 63 F.3d 635, 637 (7th Cir. 1995) (finding no ADA violation where alcoholic plaintiff was demoted because he lost his driver's license as a result of drunk driving); Maddox v. Univ. of Tenn., 62 F.3d 843, 847-48 (6th Cir. 1995) (finding no ADA violation where alcoholic plaintiff was discharged following arrest for drunk driving).

Thus, even if Vandenbroek's claim that PSEG terminated him for conduct that was caused by his alcoholism was true, it is not actionable under the ADA.  Moreover, Vandenbroek's reliance on cases brought under the Rehabilitation Act is misplaced.

In any event, even if Vandenbroek's conduct was covered by the ADA, the undisputed facts show that he cannot establish the fourth element of a prima facie case – that he was discharged because of his disability.  See Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001).  As Vandenbroek essentially concedes, he was terminated because of his violations of the no call/no show policy (which he says was caused by his alcoholism).  He has produced no evidence from which a reasonable juror could conclude that his alcoholism was a factor in the decision to terminate him or that PSEG's proffered legitimate reason for terminating him -- violation of company policy -- was pretextual.

For these reasons, PSEG is entitled to summary judgment on Vandenbroek's claims under the ADA and CFEPA.[3]

B.   FMLA Retaliation

PSEG asserts that Vandenbroek has failed to raise an issue of material fact to defeat its Motion for Summary Judgment on Vandenbroek's FMLA retaliation claim. The court agrees.

FMLA prohibits an employer from retaliation against an employee for exercising his rights under the FMLA. Sista v. CDC Ixis No. Am., Inc., 445 F.3d 161 (2d Cir. 2006). In contrast to cases alleging interference with FMLA rights, FMLA retaliation claims are analyzed under the McDonnell Douglas burden-shifting approach and the employer's intent is a material factor. Id. at 175-76.

To make out a prima facie case of retaliation, Vandenbroek must establish that (1) he exercised rights protected under FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Id. Even if, as Vandenbroek argues, the temporal proximity between his FMLA leave and his termination as well as PSEG's prior admonitions about his "excessive leave" were sufficient to create a genuine issue of fact as to PSEG's retaliatory intent, cf. Bush v.

---

[3] Connecticut looks to federal employment discrimination law for guidance in enforcing its own antidiscrimination statute. State v. Comm'n on Human Rights & Opportunities, 211 Conn. 464, 470, 559 A.2d 1120 (1989). Vandenbroek does not provide any basis for the court to give his state cause of action a different interpretation than his ADA claim. Thus, the court concludes that PSEG is entitled to summary judgment on the CFEPA claim for the same reasons it is entitled to summary judgment on the ADA claim.

Fordham Univ., 452 F. Supp.2d 394, 417 (S.D.N.Y. 2006); Bond v. Sterling, Inc., 77 F. Supp.2d 300, 304 (N.D.N.Y. 1999), Vandenbroek's claim nonetheless fails because he has no evidence from which a reasonable factfinder could conclude that PSEG's stated reason for terminating him -- his two violations of the no call/no show policy -- was merely a pretext masking its impermissible retaliatory motive.  See Sista, 445 F.3d at 176.

In addition, because PSEG's articulated non-pretextual reason for terminating Vandenbroek is based on events that occurred prior to his going on medical leave on February 22, 2006,[4] Vandenbroek's retaliation claim is not actionable because FMLA "gives no greater job security than that to which the employee would have been entitled prior to taking leave."  Id. (quoting Hale v. Mann, 219 F.3d 61, 66, 70 (2d Cir. 2000)).

PSEG is accordingly entitled to summary judgment on Vandenbroek's FMLA retaliation claim.

## V. CONCLUSION

For the foregoing reasons, PSEG's Motion for Summary Judgment (Doc. No. 34) is GRANTED.  The Clerk is directed to enter judgment for PSEG and to close this case.

---

[4] PSEG attempted to have a meeting to discuss Vandenbroek's violation of the no call/no show policy on February 22, 2006, but when it contacted Vandenbroek to ask him to come in for an afternoon meeting, Vandenbroek said he could not do so because he had a doctor's appointment.  PSEG told him that he could not return to work without first coming in for a meeting and participating in a fact-finding investigation of the incident.  Vandenbroek then told PSEG that he was temporarily unavailable to return to work or participate in the investigation because he was receiving treatment for his alcoholism.

**SO ORDERED.**

 Dated at Bridgeport, Connecticut this 9th day of March, 2009.

           /s/ Janet C. Hall
          Janet C. Hall
          United States District Judge